UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Angel P. o/b/o J.T.W.S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

23-CV-0130-LJV
DECISION & ORDER

---

On February 7, 2023, the plaintiff, Angel P. ("Angel"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that her child, J.T.W.S., was not disabled.[2] *Id.* On May 8, 2023, Angel moved for judgment on the pleadings, Docket Item 6-1; on August 4, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11-1; and on August 18, 2023, Angel replied, Docket Item 12.

For the reasons that follow, this Court grants Angel's motion in part and denies it in part and denies the Commissioner's cross-motion.[3]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Angel applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

I.      **CHILDREN'S DISABILITY STANDARD**

An individual under the age of 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make that determination, the ALJ first must decide whether the claimant is currently engaged in substantial gainful activity, not surprisingly defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in substantial gainful activity, he or she is not disabled regardless of medical condition, age, education, or work experience, *id.* § 416.924(b); if not, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." *Id.* § 416.924(a). An impairment is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ decides whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings. *Id.* § 416.924(d).  If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled.  *Id.* § 416.924(d).

To determine whether impairments functionally equal one in the listings for a claimant who is less than 18 years old, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  *Id.* § 416.926a(b)(1).  That assessment compares how the child performs in each of these domains with the typical functioning of a child the same age without an impairment.  *Id.* § 416.926a(b).

"For a child's impairment to functionally equal" an impairment in the listings, "the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain."  *Encarnacion ex rel. George v. Astrue,* 568 F.3d 72, 75 (2d Cir. 2009) (quoting 20 C.F.R. § 426a(a) (internal quotation marks omitted)).  A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i).  In determining whether impairments are "marked" or "extreme," the

4

ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects.  *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

## DISCUSSION

### I.    THE ALJ'S DECISION

On September 29, 2021, the ALJ found that J.T.W.S. had not been under a disability since Angel filed her application for SSI on J.T.W.S.'s behalf on February 14, 2020.  *See* Docket Item 5 at 22.  The ALJ's decision was based on the sequential evaluation process under 20 C.F.R. §§ 404.1520(a), and 416.920(a).  *See id.*

At step one, the ALJ found that J.T.W.S. was a "preschooler" who had not engaged in substantial gainful activity since Angel filed her application.  *Id.* at 15.  At step two, the ALJ found that J.T.W.S. suffered from three severe, medically determinable impairments: "a conduct disorder, an attention-deficit hyperactivity disorder (ADHD)[,] and an autism spectrum disorder."  *Id.*

At step three, the ALJ found that J.T.W.S.'s severe, medically determinable impairments did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 16.  First, the ALJ found that J.T.W.S.'s impairments did not meet listings 112.08 (personality and impulse-control disorders), 112.10 (autism spectrum disorder), or 112.11 (neurodevelopmental disorders).  *Id*.  The ALJ then addressed functional limitations "by considering how [J.T.W.S.] functions at home, at school, and in the community; the interactive and cumulative effects of all [J.T.W.S.'s] medically determinable impairments on [J.T.W.S.'s] activities; and the type, extent, and frequency of help [J.T.W.S.] needs."  *Id*.  And the

5

ALJ concluded that J.T.W.S. "does not have an impairment or combination of impairments that functionally equals a listing, because [J.T.W.S.] does not have either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." *Id.* at 21.

More specifically, the ALJ found that J.T.W.S. had less-than-marked limitations in all six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* at 17. And for that reason, the ALJ found that J.T.W.S. had not been under a disability since February 14, 2020, and that Angel was not entitled to SSI on J.T.W.S.'s behalf. *Id.* at 21.

## II.   ALLEGATIONS

Angel argues that the ALJ erred in two ways. Docket Item 6-1 at 1. First, she argues that the ALJ failed to properly explain the supportability and consistency factors in assessing the opinion of Courtney Kise, LMHC. *Id.* at 11-20. Second, she argues that the ALJ cherry-picked evidence when evaluating J.T.W.S.'s limitations in the six domains, leaving the decision unsupported by substantial evidence. *Id.* at 20-27. This Court agrees that the ALJ erred in assessing the domains and therefore remands the matter to the Commissioner.

## III.   ANALYSIS

"When reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence[] and employ a 'whole child' approach." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.,* 521 F. Supp. 3d 287, 291 (W.D.N.Y. 2021) (alteration, internal quotation marks, and citation omitted). "This approach

6

requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine [to] what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* at 291-92 (internal quotation marks and citation omitted). "When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records, such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child himself, in order to take into account the whole child." *Martonique A. o/b/o/ M.Q. v. Comm'r of Soc. Sec.*, 2023 WL 5723067, at *5 (W.D.N.Y. Sep. 5, 2023) (quotation omitted).

Here, the ALJ failed to adequately explain how the evidence supports his determination that J.T.W.S. had less-than-marked limitations in attending and completing tasks, interacting and relating with others, and caring for oneself. While the ALJ's decision may appear adequate at first blush, a thorough review of the record—and a careful look at the specific pages that the ALJ cites in support of his determination—paints a much more troubling account of J.T.W.S.'s behavioral problems than the ALJ describes. *See Sabrina L. o/b/o T.L. v. Berryhill,* 2018 WL 6521760, at *13 (W.D.N.Y. Dec. 12, 2018) ("Although the ALJ's observations are accurate, they reflect only the most favorable parts of the record.") (citing *Goins ex rel. J.D.G. v. Berryhill*, 2017 WL 5019273, at *4 (W.D.N.Y. Nov. 3, 2017) ("In evaluating the domains of functioning, ALJs may not cherry pick evidence by crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source.")). And for that reason, remand is required.

A.     ATTENDING AND COMPLETING TASKS

The domain of attending and completing tasks encompasses how well a child is "able to focus and maintain [his or her] attention" and how well he or she can "begin, carry through, and finish" activities, "including the pace" at which he or she performs activities and the ease with which he or she transitions between activities.  20 C.F.R. § 416.926a(h).  Children between three and six years old, such as J.T.W.S.,

> should be able to pay attention when [they] are spoken to directly, sustain attention to [their] play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. [They] should also be able to focus long enough to do many more things by [them]sel[ves], such as getting [their] clothes together and dressing [them]sel[ves], feeding [them]sel[ves], or putting away [their] toys. [They] should usually be able to wait [their] turn and to change [their] activity when a caregiver or teacher says it is time to do something else."

*Id.* § 416.926a(h)(iii).  "Examples of limited functioning in attending and completing tasks" include being easily distracted; being slow to focus on or failing to complete activities of interest to the child; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including ones the child is capable of completing; and requiring extra supervision to keep the child engaged in an activity.  *Id.* § 416.926a(h)(3)(i-v).

The ALJ said that his decision that J.T.W.S. had a less-than-marked limitation in attending and completing tasks was "supported by the evaluation report indicating that [J.T.W.S.] presented with impulsive behavior that may include throwing toys, defiant behavior, difficulty remaining still, as well as difficulty following directions and classroom rules/routines."  Docket Item 5 at 19 (citing *id.* at 424).  That was the entire explanation that the ALJ provided.  How that supports a less-than-marked limitation is hard to fathom.  And at the very least, that explanation does little to construct "an accurate and

8

logical bridge" between the ALJ's recitation of the facts and the conclusions that he reached.  See *Hamedallah ex. rel. E.B. v. Astrue,* 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (quoting *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002)).

Indeed, without more, the ALJ's description of J.T.W.S.'s conduct—"impulsive behavior . . ., throwing toys, defiant behavior, difficulty remaining still, [and] difficulty following directions and classroom rules"—would seem to support Angel's assertion that "J.T.W.S. was unable to attend and maintain [sic] tasks."  Docket Item 6-1 at 22; *see also Shaune H. o/b/o T.A.P. v. Comm'r of Soc. Sec.,* 2023 WL 1987992, at *3 (W.D.N.Y. Feb. 14, 2023) ("[T]he ALJ failed to explain how the evidence supported less[-]than[-]marked limitations in the domains.").  For that reason, the ALJ's finding in the domain of attending and completing tasks is not supported by substantial evidence.

### B.  INTERACTING AND RELATING WITH OTHERS

With respect to "interacting and relating with others," the regulations "consider how well [children can] initiate and sustain emotional connections with others, develop and use the language of [their] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  Children between three and six years old, such as J.T.W.S.,

> should be able to socialize with children as well as adults. [They] should begin to prefer playmates [their] own age and start to develop friendships with children who are [their] age. [They] should be able to use words instead of actions to express [themselves], and also be better able to share, show affection, and offer to help. [They] should be able to relate to caregivers with increasing independence, choose [their] own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. [They] should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and

9

> unfamiliar listeners can understand what [they] say most of the time.

*Id.* § 416.926a(i)(2)(iii). "Examples of limited functioning in interacting and relating with others" include not reaching out to be picked up and held by a caregiver; having no close friends; avoiding or withdrawing from people they know; and having difficulty communicating with others, playing games or sports with rules, and speaking intelligibly or with adequate fluency. *Id.* § 416.926a(i)(3)(i-vi).

Angel argues that the ALJ's finding that J.T.W.S. had a less-than-marked limitation in interacting and relating with others was not supported by substantial evidence because "the ALJ improperly cherry-picked evidence" to support his conclusion. Docket Item 6-1 at 23. This Court agrees. *See Strange v. Comm'r of Soc. Sec.,* 2014 WL 4637093, at *9 (N.D.N.Y. Sep. 16, 2014) ("A classic case of cherry-picking evidence occurs when [ALJs] credit information consistent with their findings while ignoring or discrediting inconsistent information *from the same sources* without providing plausible reasons.").

In finding that J.T.W.S. had a less-than-marked limitation in interacting and relating with others, the ALJ cited six pages of evidence that do little to support that conclusion. Docket Item 5 at 19. For example, the ALJ cited Angel's report that J.T.W.S. has difficulty sitting in a group setting, *id.* (citing *id.* at 208), as well as her testimony that he has no friends, *id.* at 19 (citing *id.* at 48). The ALJ also cited school records indicating that J.T.W.S. needs to "improve his overall social-emotional skills, with difficulty participating in adult directed activities," *id.* at 19 (citing *id.* at 411), and that J.T.W.S. "needs to improve his ability to engage with peers," *id.* at 19 (citing *id.* at

10

327).  Again, it is hard to understand how that evidence supports a less-than-marked limitation.

To be sure, the ALJ also cited records from BestSelf Behavioral that J.T.W.S. has "age-appropriate social skills," *id.* at 19 (citing *id.* at 456), as well as school records finding that J.T.W.S. "is friendly, separates from a parent without extreme distress[,] and can at times engage nicely," *id.* at 19 (citing *id.* at 411).  And he noted that J.T.W.S. "can engage in conversation and play with peers and adults, use verbal language, and identify emotions using visual cues." *Id.* at 19 (citing *id.* at 327).  But without any explanation or analysis, those observations do not undermine the serious deficiencies also noted.  Simply because a child "separates from a parent without *extreme* distress" and "can *at times* engage nicely," *id.* at 19 (emphasis added), for example, does not mean that the child can interact with and relate to others without significant limitations.

What is more, a close examination of the records the ALJ cited to support his determination that J.T.W.S. had a less-than-marked limitation in interacting and relating with others, *id.,* (citing *id.* at 411), suggests that J.T.W.S. had far more significant limitations in this domain.  For example, the ALJ cited a February 2020 review finding that J.T.W.S. was friendly and sometimes "engage[d] nicely." *Id.* (citing *id.* at 411).  But that reviewer also noted that J.T.W.S.'s "attention to direction was poor as was his participation"; that J.T.W.S. "frequently became defiant[,] requiring frequent redirection and a fast pace"; and that J.T.W.S.'s "'social participation' [skills] present[ed] with a definite dysfunction." *Id.* at 411.  Likewise, the reviewer noted that J.T.W.S.'s "social emotional skills fall within the high[-]risk range overall"; that J.T.W.S. "demonstrated difficulty participating in adult directed activities, sitting[,] and attending"; and that

11

J.T.W.S. "often refused tasks." *Id.* The reviewer concluded that J.T.W.S. "needs to improve his overall social-emotional skills to more age appropriate and independent levels including peer and adult interactions, play skills, impulse control[,] and ability to attend to task." *Id.*

Other school records that the ALJ cited to support his conclusion likewise suggest more significant limitations than the ALJ found. For example, the ALJ correctly cited records finding that J.T.W.S. "can engage in conversation and play with peers and adults, use verbal language, and identify emotions using visual cues." *See id.* at 19 (citing *id*. at 327). But the ALJ did not acknowledge that the same record noted that J.T.W.S. "struggles with several skills including looking and listening to an adult and following directions when he is not getting his way or when it is a non-preferred activity," *id.* at 325; "would seek out the [calming] corner frequently, especially during circle time to avoid sitting and participating*,*" *id.* at 326; "may ignore a simple direction, such as 'line up' or 'clean up' and show an unwillingness to complete an academic task when asked," *id*.; and "will shout that he hates the activity presented to him and is quick to say that he 'cannot do it' without even trying," *id.* And the same record concluded that J.T.W.S. "needs to" improve his coping skills; increase compliance; improve his ability to verbalize his wants/needs when upset; improve his self-regulation and his ability to wait his turn and share; and use appropriate coping strategies when upset. *Id.* at 327.

The teacher questionnaire completed by Lori Urbanczyk, MSED, also supports Angel's argument that the ALJ cherry-picked records to support his conclusion. For example, Ms. Urbanczyk noted that J.T.W.S. had "severe tantrums that would last hours," exhibited "unsafe behaviors" including "climbing [and] jumping off furniture," hit[],

12

kick[ed], spit[, and] attempt[ed] to bite" others; "threat[ened] to harm self [and] others"; swore and used "inappropriate language"; and "thr[ew] objects." *Id.* at 296. Ms. Urbanczyk also noted that J.T.W.S. had a very serious and frequent (daily) problem "seeking attention . . . [and] expressing anger appropriately"; a serious and frequent (daily) problem "following rules . . . [and] respecting/obeying adults in authority"; and an obvious and frequent (daily) problem "playing cooperatively with other children[,] making and keeping friends[,] and asking permission appropriately." *Id.*

The ALJ mentioned Ms. Urbanczyk's opinion, but he did not refer to its more significant and troubling findings. *See id*. at 21. And although the ALJ asserted that the "opinion is not consistent with school records indicating that the child is friendly, separates from a parent without extreme distress[,] and can at times engage nicely," *id.*, (citing *id.* at 411), he never explained why he reached that conclusion. A child who can engage nicely at times, *see id*., might still "hit[], kick[], spit[, and] attempt[] to bite" others and "threat[en] to harm self [and] others," *see id.* at 296. A child who is "friendly," *see id.* at 21, might still have "severe tantrums that would last hours" and exhibit "unsafe behaviors" including "climbing [and] jumping off furniture," *see id.* at 296.

Because the ALJ's reasons for discounting Ms. Urbanczyk's questionnaire are largely conclusory and do not address other consistent evidence in the record, the Court cannot follow his reasoning. *See Tina T. o/b/o J.J.W. v. Comm'r of Soc. Sec.,* 2024 WL 4463298, at *5 (N.D.N.Y. Apr. 19, 2024) (explaining that "ALJ must 'explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning.") (internal citations omitted), *report and recommendation*

*adopted,* 2024 WL 4132200 (N.D.N.Y. Sep. 10, 2024); *Lucsheena N. o/b/o I.A.K.W. v. Comm'r of Soc. Sec.,* 2022 WL 4545693, at *4 (W.D.N.Y. Sep. 29, 2022) ("[A] close reading of the decision shows that the ALJ credited only those portions of [the teacher questionnaire] that supported his findings . . ., and that he ignored or dismissed the portions . . . that indicated . . . greater limitations in those same areas.  This error was compounded by the fact that other evidence in the record supported a finding of greater limitations.").  And that is especially problematic because Ms. Urbanczyk's opinion well "may have an effect on the outcome of the case."  20 C.F.R. § 404.1527(f)(2).

In sum, much of the evidence the ALJ cites to support his determination that J.T.W.S. had a less-than-marked limitation in the domain of interacting and relating with others simply does not support that finding.  And other evidence that the ALJ cites cherry-picked snippets supporting his conclusion and ignored significant evidence to the contrary.  *See Lee G. v. Comm'r of Soc. Sec.,* 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking 'refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'" (citation omitted)).  As a result, the ALJ's finding that J.T.W.S. had a less-than-marked limitation in the domain of interacting and relating with others is unsupported by substantial evidence.

### C.   CARING FOR ONESELF

In the domain of caring for oneself, the regulations "consider how well [children can] maintain a healthy emotional and physical state, including how well [they] get [their] physical and emotional wants and needs met in appropriate ways; how [they] cope with stress and changes in [their] environment; and whether [they] take care of [their] own health, possessions, and living area."  20 C.F.R. § 416.926a(k).  "Caring for yourself

14

effectively requires [children] to have a basic understanding of [their] bod[ies] . . . and of [their] physical and emotional needs. To meet these needs successfully, [they] must employ effective coping strategies, appropriate to [their] age, to identify and regulate [their] feelings, thoughts, urges, and intentions." *Id.* § 416.926a(k)(1)(iii).

Children between three and six years old, such as J.T.W.S.,

> should want to take care of many of [their] physical needs by [them]sel[ves] (e.g., putting on [their] shoes, getting a snack), and also want to try doing some things that [they] cannot do fully (e.g., tying [their] shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for [them] to agree to do what [their] caregiver asks. Later, that may be difficult for [them] because [they] want to do things [their] way or not at all. These changes usually mean that [they] are more confident about [their] ideas and what [they] are able to do. [They] should also begin to understand how to control behaviors that are not good for [them] (e.g., crossing the street without an adult).

*Id.* § 416.926a(k)(2)(iii). "Examples of limited functioning in caring for [one]self" include continuing to place non-nutritive or inedible objects in their mouths; using self-soothing activities showing developmental regression; not dressing or bathing themselves appropriately; engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication) or ignoring safety rules; not spontaneously pursuing enjoyable activities or interests; and having disturbances in eating or sleeping patterns. *Id.* § 416.926a(k)(3)(i-vi).

In finding that J.T.W.S. had a less-than-marked limitation in the domain of caring for oneself, the ALJ acknowledged J.T.W.S.'s history of "temper tantrums," but then cited school records indicating "age-appropriate self-help skills," "sensory processing skills . . . within the typical range," and the ability to "complete puzzles" and to "take off

and put on most clothing." See Docket Item 5 at 20.  The ALJ's analysis and conclusion in this domain suffers from many of the same deficiencies addressed above.

For example, while the ALJ mentions J.T.W.S.'s temper tantrums and cites the psychological evaluation provided by Stacey Morrisey, MA, CAS, see id. (citing id. at 417-20), he does not address the more troubling findings in that evaluation.  For example, Ms. Morrisey noted that

> [J.T.W.S.] played very rough with . . . toys [and] pretended to be a dog, roughly thrashing the toys back and forth while holding them in [the] mouth. [J.T.W.S.] also panted loudly [and] . . .then got up on the couch and began to climb. [J.T.W.S.] was somewhat rough and not very gentle/aware of [the] surroundings (kicking the examiner a few times). [J.T.W.S.] then got down from the couch and began to kick [their] dog. [J.T.W.S.] did stop when prompted by . . . mother; however, [J.T.W.S.] did spit in retaliation [and] remained very active until the examiner left.

*Id.* at 418.  Ms. Morrisey also noted that

> [a]t home, [J.T.W.S.] has severe (daily) tantrums. When upset, [J.T.W.S.] will throw things, destroy household objects, scream, hit[,] and swear. [J.T.W.S.] gets into things throughout the day and is also prone to running/bolting in public. [Angel] also reports that [J.T.W.S.] is oppositional and stubborn. It is very difficult to take [J.T.W.S.] out of the house. [Angel] has to take [J.T.W.S.]  in a stroller in order to avoid . . . running off.  Furthermore, [J.T.W.S.] is inattentive and hyperactive. These behaviors cause significant stress and cause family dysfunction.

*Id.* at 420.

Ms. Urbanczyk's teacher questionnaire likewise noted that J.T.W.S. had severe tantrums lasting for hours and exhibited unsafe behavior.  See id.  at 296.  And a session note provided by Alison Castanza, LMSW, dated September 18, 2020, stated that J.T.W.S. attempted to hit and kick teachers; had difficulty controlling verbal and

physical impulses; picked up rocks during a walk and threw them towards a classmate and teacher aid; and picked up wood chips and threw them. *See id.* at 245.

So while the ALJ acknowledged J.T.W.S.'s "temper tantrums" in assessing the domain of self-care, *see id*. at 20, he certainly did not address the extent of those tantrums or parallel behavior.

Nor did the ALJ even mention J.T.W.S.'s threats of self-harm—threats that might bear directly on this domain, *see* 20 C.F.R. § 416.926a(k)(3)(i-vi)—when addressing J.T.W.S.'s limitations in self-care, *see id.*  As noted above, Ms. Urbanczyk's teacher questionnaire noted that J.T.W.S. "threat[ened] to harm self [and] others." *See id.* at 296.  Other records corroborated Ms. Urbanczyk, noting that J.T.W.S. expressed "negative self-talk and thoughts of hurting himself*,*" *see id.* at 267, and exhibited "unsafe behaviors" on more than one occasion*, see, e.g., id.* at 271-72, 285.

Moreover, as the ALJ himself noted, Courtney Kise, LMHC, found that J.T.W.S. was "extremely limited" in caring for himself. *Id.* at 20 (citing *id*. at 301).  The ALJ found that opinion "not very persuasive" because it "was not consistent with school records, which indicate that the child is friendly, separates from a parent without extreme distress and can at times engage nicely." *See id*.  But none of that has anything to do with the ability to care for oneself.  And at least one "school record," Ms. Urbanczyk's teacher questionnaire, noted that in the area of caring for himself, J.T.W.S. had a very serious and frequent (daily) problem "using good judgment regarding personal safety and dangerous circumstances," and "identifying and appropriately asserting emotional needs."  *Id.* at 298.  So the ALJ's assertion is inaccurate as well as illogical.

17

It is well settled that in any determination an ALJ must address the crucial factors with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence. *See Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984). The ALJ did not do that here. And while the ALJ's analysis highlights some of J.T.W.S.'s physical capabilities, the ALJ did not address the extensive evidence demonstrating J.T.W.S.'s significant emotional and behavioral problems and suggesting that J.T.W.S. may be far more limited than the ALJ found. *See Jenia W. o/b/o/ L.J.R. v. Comm'r of Soc. Sec.,* 2022 WL 507345, at *4 (W.D.N.Y. Feb. 18, 2022) ("Although this [c]ourt must accept the ALJ's reasonable interpretation of the evidence, the ALJ has not provided any explanation suggesting how a reasonable fact-finder could interpret the opinions and evidence of record as supportive of a less than marked, rather than marked, limitation in the domain of caring for oneself.") (quotation omitted). For that reason, the ALJ's findings in the domain of self-care also are unsupported by substantial evidence.

## **CONCLUSION**

In sum, the ALJ's decision does not "permit the reviewer to glean the rationale" in the above three domains. *See Porter v. Colvin,* 2016 WL 1084162, at *4 (W.D.N.Y. Mar. 21, 2016).[4] Because the ALJ chose portions of the record that supported his

---

[4] Angel has not challenged the ALJ's findings with respect to the remaining domains of functioning, and this Court therefore need not analyze them. *See Nicole A. v. Comm'r of Soc. Sec.,* 2021 WL 916016, at *5 (W.D.N.Y. Mar. 10, 2021) (limiting analysis to "functional domain findings specifically challenged by plaintiff"). The Court "will not reach the remaining issues raised by [Angel] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Morales v. Colvin,* 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (not reaching additional arguments regarding the ALJ's factual determinations

18

determination without mentioning evidence to the contrary, and because the ALJ inadequately explained the conclusions that he reached, remand is required.  See *Brady H. v. Comm'r of Soc. Sec.,* 2022 WL 702155, at *4 (W.D.N.Y. Mar. 9, 2022) ("Because I agree with plaintiff that [the ALJ] did not properly support his conclusions under these two domains, remand is required."); *Montanaz v. Berryhill,* 334 F. Supp. 3d 562, 565 (W.D.N.Y. 2018) (internal citations omitted) ("While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot selectively choose evidence in the record that supports his conclusions."); *Goins,* 2017 WL 5019273, at *3 (remanding where there was "no evidence that the ALJ considered anything other than reports in the record evidence that supported a finding of a less[-]than[-]marked limitation, while ignoring conflicting evidence in some of those same reports.").

      Upon remand, "the ALJ must revisit the relevant domains of functioning . . . and render a new determination.  In his new decision, the ALJ must justify any determination that claimant's impairments do not entitle him to benefits with sufficient specificity to permit meaningful review."  *Bradley o/b/o Y.T.B. v. Berryhill,* 305 F. Supp. 3d 460, 464 (W.D.N.Y. 2018).

---

"given that the ALJ's analysis may change on these points upon remand"), *report and recommendation adopted,* 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

The Commissioner's motion for judgment on the pleadings, Docket Item 11-1, is DENIED, and Angel's motion for judgment on the pleadings, Docket Item 6-1, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:　　April 7, 2025
　　　　　　Buffalo, New York

　　　　　　　　　　　　　　　　　　　　　　*Lawrence J. Vilardo*
　　　　　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE